# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Susan Iliff; Betty Lees; Linda Cobb;
Nancy Lawrence; Patricia Johnson;
Gwenneth Larson; Patricia Noel; Sharifah
Doyle-El; and HOME Line, a Minnesota
Nonprofit Corporation, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

vs.

Dominium Management Services, LLC;
St. Anthony Leased Housing
Development II, LLC; St. Anthony
Leased Housing Associates II, Limited
Partnership; St. Anthony Leased Housing
Associates II, LLC; Coon Rapids Leased
Housing Development IV, LLC; Coon
Rapids Leased Housing Associates IV,
LLLP; Coon Rapids Leased Housing
Associates IV, LLC; St. Paul Leased
Housing Development VI, LLC; St. Paul
Leased Housing Associates VI, LLLP; St.
Paul Leased Housing Associates VI,
LLC; Crystal Leased Housing
Development I, LLC; Crystal Leased
Housing Associates I, LLLP; Crystal
Leased Housing Associates I, LLC;
Cottage Grove Leased Housing
Development I, LLC; Cottage Grove
Leased Housing Associates I, LLLP;
Cottage Grove Leased Housing
Associates I, LLC; Woodbury Leased
Housing Development II, LLC;
Woodbury Leased Housing Associates II,
LLLP; Woodbury Leased Housing
Associates II, LLC; Minneapolis Leased
Housing Development IX, LLC;

Case No.: 0:21-cv-00649-MJD/TNL

**DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO
REMAND TO STATE COURT**

Minneapolis Leased Housing Associates
IX, LLLP; Minneapolis Leased Housing
Associates IX, LLC; Minneapolis Leased
Housing Development IV, LLC;
Minneapolis Leased Housing Associates
IV, Limited Partnership; Minneapolis
Leased Housing Associates IV, LLC; St.
Paul Leased Housing Development IX,
LLC; St. Paul Leased Housing Associates
IX, LLLP; St. Paul Leased Housing
Associates IX, LLC; St. Paul Leased
Housing Development X, LLC; St. Paul
Leased Housing Associates X, LLLP; St.
Paul Leased Housing Associates X, LLC;
St. Paul Leased Housing Development
VIII, LLC; St. Paul Leased Housing
Associates VIII, LLLP; St. Paul Leased
Housing Associates VIII, LLC; Champlin
Leased Housing Development IV, LLC;
Champlin Leased Housing Associates IV,
LLLP; Champlin Leased Housing
Associates IV, LLC; Columbia Heights
Leased Housing Development III, LLC;
Columbia Heights Leased Housing
Associates III, LLLP; Columbia Heights
Leased Housing Associates III, LLC;
Lexington Leased Housing Development
I, LLC; Lexington Leased Housing
Associates I, LLLP; Lexington Leased
Housing Associates I, LLC; Blaine
Leased Housing Development III, LLC;
Blaine Leased Housing Associates III,
LLLP; Blaine Leased Housing Associates
III, LLC; Spring Lake Park Leased
Housing Development I, LLC; Spring
Lake Park Leased Housing Associates I,
LLLP; Spring Lake Park Leased Housing
Associates I, LLC; Minnetonka Leased
Housing Development II, LLC;
Minnetonka Leased Housing Associates
II, LLLP; Minnetonka Leased Housing
Associates II, LLC; St. Cloud Leased
Housing Development III, LLC; St.

Cloud Leased Housing Associates III,
LLLP; St. Cloud Leased Housing
Associates III, LLC; Dominium
Development & Acquisition, LLC;
Dominium, Inc., Dominium Holdings I,
LLC; and Dominium Holdings II, LLC,

                                    Defendants.

_____

Defendants submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Remand to State Court.

## INTRODUCTION

When considering whether to remand a lawsuit that asserts only state law claims, the Court must determine what Plaintiffs' Complaint is actually asking the Court to decide. If the Complaint necessarily raises a disputed and substantial federal issue capable of resolution, without disrupting the federal-state balance approved by Congress, then a federal question exists and the Court should exercise federal subject matter jurisdiction.

Here, this case warrants federal jurisdiction. Plaintiffs allege Defendants improperly calculated the "eligible basis" in order to obtain the issuance of excessive federal tax credits associated with the construction and rehabilitation of parking at their developments. There can be no dispute that the manner by which federal tax credits are determined is a federal question governed by the Low Income Housing Tax Credit Program, 26 U.S.C. §42. Likewise, there can be no dispute that the sole dispositive factual and legal issue raised by Plaintiffs' Complaint is whether Defendants obtained excessive federal tax credits under this federal affordable housing program.

Whether Defendants properly calculated the eligible basis is a federal question that requires interpretation of the federal statutes enacted and federal regulations promulgated for the operation of the federal Low Income Housing Tax Credit Program.  Further, if Defendants properly calculated eligible basis in accordance with federal law – *which, they did here* – then Plaintiffs' Complaint should be dismissed.  Even if Defendants improperly calculated eligible basis as it pertains to the issuance of federal tax credits – *which they did not* – the Court would still have to determine whether the federal Low Income Housing Tax Credit Program grants private residents the authority to rectify any perceived miscalculation of federal tax credits through state law causes of action, or whether the regulatory and enforcement authority resides solely with the IRS and the Allocators.[1]

In either event, the central and dispositive issues raised by Plaintiffs' Complaint are undoubtedly disputed and substantial federal questions, given that resolution of these questions in the manner advocated by Plaintiffs would impact the issuance and calculation of tax credits country-wide and would impact the administration of the Low Income Housing Tax Credit Program.  Moreover, the issues raised by Plaintiffs' Complaint can be resolved without disruption of the federal-state balance approved by Congress because resolution will only involve the interpretation and enforcement of a federal law, namely 26 U.S.C. § 42.  As such, Plaintiffs' Complaint raises a federal question, the Court should

---

[1] This all assumes, for the sake of argument, that Plaintiffs' Complaint actually states a claim upon which relief can be granted, *which it does not*, for all of the reasons set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Purported Class Action Complaint.  Dkt. 16.

exercise federal subject matter jurisdiction, and Plaintiffs' Motion to Remand to State Court should be denied.

<u>**FACTS AS ALLEGED IN THE COMPLAINT**[2]</u>

Plaintiffs allege they have a right to free parking because Defendants improperly calculated the "eligible basis" to obtain the issuance of excessive federal tax credits under 26 U.S.C. § 42 of the Internal Revenue Code, i.e., the federal Low Income Housing Tax Credit Program. Although pled as state law based claims, Plaintiffs' entire case rises or falls on the determination of disputed and substantial federal issues that are sufficient for this Court to exercise federal jurisdiction.

## I.   THE PARTIES.

According to Plaintiffs, "Dominium is one of the largest developers and providers of low-income housing in the country." Dkt. 1-1, Ex. A at ¶ 2. Many of Dominium's tenants are senior citizens and Dominium promotes the availability of underground parking to senior citizens living in Minnesota. *See id.*

Plaintiffs identify eighteen different "Minnesota affordable housing properties that (Dominium) developed, owns, and manages[.]" *Id.* at ¶ 9. The individual Plaintiffs reside at four of the eighteen identified properties; namely, the River North complex in Coon

---

[2] Defendants do not concede the truth or accuracy of the facts alleged by Plaintiffs. However, as this Motion to Remand presents an attack of the Court's jurisdiction based on whether the allegations in the Complaint raise a substantial and disputed federal question, "the court must confine itself to the pleadings" and "accept all factual allegations in the pleadings as true" as it would in considering a motion brought under Rule 12(b)(6). *Great Lakes Gas Transmission Ltd. Partnership v. Essar Steel Minnesota, LLC*, No. 09-cv-3037-SRN-LIB, 2015 WL 3915687 at *6 (D. Minn. June 25, 2015).

Rapids, the Legends at Silver Lake Village complex in St. Anthony, the Legends of Champlin complex in Champlin and the 1500 Nicollet complex in Minneapolis. *See id.* at ¶¶ 11-18.[3]

## II.   DEFENDANTS' FEDERALLY REGULATED BUSINESS MODEL.

Plaintiffs allege they have brought this class action lawsuit "to redress Defendants' fraudulent and illegal business model that diverts millions of dollars earmarked for affordable housing into corporate profits." *Id.* at ¶ 1. They allege that Defendants' "business model depends on at least two sources of public funding, both of which impose significant regulatory obligations." *Id.* at ¶ 3. The first, Plaintiffs allege, is Defendants' "[application] for and [receipt of] Low-Income Housing Tax Credits ("LIHTC") to help finance the development or acquisition of low-income housing." *Id.* The second, Plaintiffs allege, is Defendants' practice of "charg[ing] its low-income tenants rent based on their income and receiv[ing] additional rent based on government established formulas in the form of federal and/or state rent subsidies." *Id.* Plaintiffs allege these sources of funding "are highly regulated and subject to complex sets of rules." *Id.*

The linchpin of Plaintiffs' Complaint is the factual and legal allegation that Defendants have overstated the eligible basis of their affordable housing developments in order to obtain greater federal tax credits than they should receive under the LIHTC program. *Id.* at ¶¶ 3-8. Specifically, Plaintiffs allege Defendants' "business model" is to

---

[3] In addition to the individual named Plaintiffs, the Complaint also includes a non-profit Plaintiff, HOME Line, which "operates a hotline for tenants to address rental housing problems." *Id.* at ¶ 19.

overstate the eligible basis by incorrectly including the cost of constructing parking for affordable housing developments that will charge the residents for parking.

Plaintiffs' allegations are false and incorrect.  Defendants do not overstate the eligible basis and do not improperly calculate the cost of constructing parking for affordable housing developments that will charge the residents for parking.  But that is the central question raised by Plaintiffs' Complaint.  *Id.* at ¶¶ 3-8.

## III.    THE LOW INCOME HOUSING TAX CREDIT PROGRAM

The Low Income Housing Tax Credit Program is not mere "background" for this lawsuit, as Plaintiffs have suggested in their motion papers.  On the contrary, Plaintiffs' Complaint is fundamentally premised upon Defendants' alleged miscalculation of the "eligible basis" under the LIHTC program as it pertains to the issuance of federal tax credits associated with the construction and rehabilitation of parking at their developments.  *See generally* Dkt. 1-1, Ex. A.

As Plaintiffs allege, the LIHTC program, established as part of the Tax Reform Act of 1986, encourages private investment in affordable housing and "has financed approximately 50,000 housing units annually" since 2010.  *Id.* at ¶¶ 86 and 88.  "LIHTC are federal income tax credits awarded to developers by state and local 'allocator' agencies ('Allocators'), in a process pursuant to Section 42 of the Internal Revenue Code and requirements established by the Internal Revenue Services."  *Id.* at ¶ 4.  "The LIHTC program is jointly administered by the IRS and the Allocators – typically state or local housing finance agencies such as the Minnesota Housing Finance Agency."  *Id.* at ¶ 89. In the joint administration of the program, "[e]ach state receives an annual LIHTC allocation

based on population.  Subject to federal guidelines, Allocators then set their own priorities for allocating LIHTC by issuing a Qualified Allocation Plan ('QAP')."  *Id.* at ¶ 90.

"Affordable housing developers apply to Allocators for LIHTC by preparing and submitting a detailed application.  LIHTC may be used for projects constructing new affordable housing developments or acquiring and rehabilitating existing properties for affordable housing."  *Id.* at ¶ 91. "Though LIHTC are claimable for a period of ten years, a portion may be recaptured if the project does not comply for fifteen years."  *Id.* ¶ 95.

"Generally speaking, the amount of LIHTC awarded depends on a project's 'eligible basis.'  The eligible basis includes depreciable costs for the portion of the housing to be dedicated to affordable housing."  *Id.* at ¶ 93.  The higher the eligible basis, the more LIHTC a project may be awarded  The eligible basis is generally calculated using costs associated with acquisition, construction and/or rehabilitation, including eligible 'soft' costs."  *Id.* at ¶ 5.

## VI.   THE  STATE LAW CLAIMS ASSERTED BY PLAINTIFFS IN THE COMPLAINT.

Plaintiffs' entire lawsuit centers on their claim that Defendants' allegedly miscalculated the "eligible basis" as it pertains to the issuance of federal tax credits associated with the construction and rehabilitation of parking at their developments, and therefore they are entitled to free parking under the Low Income Housing Tax Credit Program.  *See e.g.*, Dkt. 1-1, Ex. A.

In Count One, Plaintiffs allege that Defendants violated the Minnesota Prevention of Consumer Fraud Act "[b]y intentionally and systematically misrepresenting its parking-

related costs in LIHTC applications in order to charge tenants for parking while obtaining tax credits…" *Id.* ¶ 164.  Plaintiffs further allege this is a violation of "the requirements of the low-income housing credit program under Section 42 of the Internal Revenue Code of 1986, as amended." *Id.* ¶ 166.

In Count Two, Plaintiffs allege that Defendants violated the Minnesota Deceptive Trade Practices Act by "entering into residential lease agreements…that were professed to be operated in accordance with the LIHTC Program…" and in doing so "knowingly, intentionally, and maliciously misled Plaintiffs and class members into believing they could lawfully charge additional rent for parking[.]" *Id.* at ¶176.

In Count Three, Plaintiffs allege that Defendants have been unjustly enriched as a result of "Defendants fraudulently misrepresent[ing] their development costs to [the] Allocators" and in "[h]aving obtained LIHTC to finance its parking construction costs, Defendants were required to provide those parking facilities to its tenants at no additional cost" per 26 U.S.C. § 42(d)(4)(B). *Id.* ¶¶ 179 and 180.

## ARGUMENT

Plaintiffs' Complaint alleges Defendants overstated the eligible basis so as to receive excessive tax credits for affordable housing developments that would charge the residents for parking; and, based on this erroneous allegation, Plaintiffs claim they are entitled to free parking.  These allegations and the relief sought necessarily require the Court to interpret and apply federal law as to (1) whether Defendants correctly calculated the eligible basis in accordance with federal law, and (2) whether the federal Low Income Housing Tax Credit Program grants private residents the authority to rectify any perceived

miscalculation of federal tax credits through state law causes of action, or whether the

regulatory and enforcement authority resides solely with the IRS and the Allocators.[4]

These are disputed and substantial federal issues that are capable of resolution, without

disrupting the federal-state balance approved by Congress, and therefore the Court should

exercise federal subject matter jurisdiction.

## I.      LEGAL STANDARD.

Federal question jurisdiction exists "if a federal question is presented on the face of

the plaintiff's properly pleaded complaint."   *Pet Quarters, Inc. v. Depository Trust and*

*Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (upholding removal and dismissal of

claims with prejudice).   "[T]he 'well-pleaded complaint' establishes jurisdiction through

one of two means, or portals."   *Great Lakes Gas Transmission Ltd. Partnership v. Essar*

*Steel Minnesota, LLC*, No. 09-cv-3037-SRN-LIB, 2015 WL 3915687 at *5 (D. Minn. June

25, 2015) (finding federal subject matter jurisdiction over breach of contract claim that

raised a necessarily disputed and substantial question). "The first portal to federal

jurisdiction exists when 'federal law creates the cause of action." *Id.* (quoting *Williams v.*

*Ragon*, 147 F.3d 700, 702 (8th Cir. 1998) (finding subject matter jurisdiction and vacating

remand)).   "The second portal exists if the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law." *Id.*

---

[4] Again, this all assumes, for the sake of argument, that Plaintiffs' Complaint actually states
a claim upon which relief can be granted, *which it does not*, for all of the reasons set forth
in Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Purported
Class Action Complaint.  Dkt. 16.

In addressing the determination of federal jurisdiction under the "second portal"—namely, where a plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, the Supreme Court held that, "the question is, does a state-law claim [1] necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met…jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum'." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Martinson v. Mahube-Otwa Community Action Partnership, Inc.,* 371 F. Supp. 3d 568, 573 (D. Minn. 2019). The exercise of federal jurisdiction is proper even if only one of the causes of action implicates a substantial federal question. *See Pet Quarters, Inc.*, 559 F.3d at 779 ("If even one claim in the complaint involves a substantial federal question, the entire matter may be removed.") (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

## II.   PLAINTIFFS' COMPLAINT RAISES FEDERAL QUESTION JURISDICTION BY MEETING ALL FOUR OF THE *GRABLE* REQUIREMENTS.[5]

Although it only asserts state law claims, Plaintiffs' Complaint necessarily raises disputed and substantial federal issues, which are capable of resolution without disrupting the state-federal balance approved by Congress.  As such, Plaintiffs' Motion to Remand to State Court should be denied because Plaintiffs' Complaint meets all four of the *Grable* requirements and thus raises federal question jurisdiction.[6]

### A.   *Grable* Factors 1 and 2: Plaintiffs' Complaint Necessarily Raises Disputed Federal Issues.

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (citation omitted); *see also MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412-13 (3d Cir. 2015) (construing "necessarily raised" to "mean[ ] that an element of the state law claim requires construction of federal

---

[5] Plaintiffs' spend several pages of their Memorandum of Law in Support of Plaintiffs' Motion to Remand to State Court arguing that there is no jurisdiction under the first portal to federal jurisdiction because all of their claims arise under state law.  *See* Dkt. 22 at 9 – 18.  While Defendants wholeheartedly disagree with the wild allegations Plaintiffs make regarding Defendants' conduct, Defendants do agree that there is no federal jurisdiction by way of the first portal.  There is, however, jurisdiction by way of the second portal for all of the reasons described herein.

[6] Plaintiffs' contention that Defendants were required to meet their "stringent burden of establishing federal removal jurisdiction" by analyzing more than one *Grable* factor in its Notice of Removal is unfounded.  *See* Dkt. 22, at 16-17.  Defendants are not required to undergo a full analysis of their basis for removal in their notice, but need only cite the proper statutory basis for removal and set forth a short and plain statement of the grounds of removal.  *See Pet Quarters, Inc.*, 559 F.3d at 778; *see also* 28 U.S.C. § 1446 (a).  Defendants did so.  *See* Dkt. 1-1.

law"); *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1211 (10th Cir. 2012) (finding no federal jurisdiction because it was not necessary for the court to interpret federal law to establish the state law claims); *see also City of Cambridge v. One Love Hous., LLC*, 18-CV-2763 (NEB/HB), 2019 WL 1499724, at *2 (D. Minn. Apr. 5, 2019) (case alleged a violation of a zoning ordinance, which the court held to be resolved without considering federal law). "When the federal issue is 'the only' or 'the central' point in dispute" there can be "no doubt that the 'actually disputed' factor of the [*Grable*] test is satisfied." *New York ex rel. Jacobson*, 824 F.3d at 315 (citing *Grable*, 545 U.S. at 315 ("it appears to be the only legal or factual issue contested in the case"); *Gunn*, 568 U.S. at 259 ("The federal issue is also 'actually disputed' here – indeed, on the merits, it is the central point of dispute").

Here, Plaintiffs' Complaint necessarily raises disputed federal issues. All three of Plaintiffs' causes of action – Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 (Count One), the Minnesota Uniform Deceptive Trade Practices Act (Count Two), and Unjust Enrichment (Count Three) – are expressly predicated on Plaintiffs' allegations that Defendants' allegedly miscalculated the "eligible basis" as it pertains to the issuance of federal tax credits associated with the construction and rehabilitation of parking at their developments, and therefore Plaintiffs assert, they are entitled to free parking under the Low Income Housing Tax Credit Program. *See e.g.*, Dkt. 1-1, Ex. A. Defendants' compliance with 26 U.S.C. § 42 – by way of calculating its eligible basis and receiving the correct amount of tax credits – is the only source of Defendants' alleged duties to Plaintiffs and is the central issues in this case. *See id.* ¶ 166. If Defendants properly calculated their

eligible basis – *which they did* – then Plaintiffs' Complaint fails as a matter of law and should be dismissed.  Under these circumstances, there can be no question Plaintiffs' Complaint necessarily raises disputed federal issues, because Defendants' compliance or lack of compliance with 26 U.S.C. § 42 is a necessary and essential element underlying each of Plaintiffs' state law claims.[7]

Plaintiffs' reliance on *American Petroleum Institute* to mischaracterize the instant case as one of "mere relevance of federal regulatory issues to state-law claims" is misplaced.  *See* Dkt. 22 at 17-18; *see also State v. Am. Petroleum Inst.*, No. 20-cv-1636-JRT-HB, 2021 WL 1215656, at *7 (D. Minn. Mar. 31, 2021).  In *American Petroleum Institute*, the District Court held "the Complaint does not require interpretation of any federal" laws and regulations, and instead focused on "whether Defendants engaged in a misinformation campaign that ran afoul of Minnesota's consumer protection statutes."  *Id.* But here, Plaintiffs' Complaint necessarily requires—and indeed, relies on—the interpretation and application of federal law (i.e. 26 U.S.C. §42).  The question of whether Defendants properly calculated their eligible basis in accordance with federal law and

---

[7]The inescapable fact that Plaintiffs' Complaint necessarily raises disputed federal issues is further evidenced by their repeated allegations of "misrepresentations" by virtue of the lease provision that Defendants "operated in accordance with the requirements of the low-income housing credit program under Section 42 of the Internal Revenue Code of 1986, as amended."  *See. e.g.,* Dkt. 1-1, Ex. A at ¶120 and ¶166.  Obviously, before such an allegation can give rise to a potential private cause of action (if any), or a claim for relief (if any), the Court would have to interpret and apply federal law to determine whether Defendants did or did not "operate[] in accordance with the requirements of the low-income housing credit program under Section 42 of the Internal Revenue Code of 1986, as amended" and, if not, whether federal law provides Plaintiffs with any recourse or remedy.  These are necessarily disputed federal issues.

properly obtained federal tax credits is the central and essential element underlying each of Plaintiffs' claims. *See Grable*, 545 U.S. at 315. Thus, the Court must determine whether Defendants complied with federal tax law.

Plaintiffs' reliance on *Martinson* is similarly misplaced. *See* Dkt. 22 at 19; *see also Martinson*, 371 F.Supp.3d at 575. Unlike in *Martinson* where "the task of interpreting the (federal) regulation is, at most, one step in the adjudication process," Defendants' compliance or non-compliance with 26 U.S.C. § 42 is the central issue in this case.

**B.     *Grable* Factor 3: The Federal Issues Necessarily Raised in Plaintiffs' Complaint are Substantial.**

Under *Grable*, "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages sought by the federal forum." *Grable*, 545 U.S. at 313. "The substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. In *Martinson*, Judge Tostrud recently summarized the "substantial" *Grable* factor as follows:

> An issue of federal law is substantial when it is important to the federal system as a whole, not merely when it is significant to the particular parties in the immediate suit. For a federal interest to be substantial, it must justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. A federal issue is more likely to be substantial if the Government …. has a direct interest in the availability of a federal forum to vindicate its own administrative action. A substantial federal issue is more likely to be present if a pure issue of federal law is dispositive of the case; fact-bound and situation-specific disputes typically do not implicate substantial federal issues. A federal issue is more likely to be substantial if its resolution will control numerous other cases. By contrast, if a particular federal issue does not arise frequently, it is unlikely to implicate substantial federal interests.

*Martinson*, 371 F. Supp. 3d at 574 (internal citations and quotations omitted).[8]

Here, the issues raised in Plaintiffs' Complaint are substantial and important to the federal system as a whole.  As noted by Plaintiffs, "Dominium is one of the largest developers and providers of low-income housing in the country."  Dkt. 1-1, Ex. A at ¶2.  Plaintiffs' theory as to how Defendants should have complied with 26 U.S.C. § 42 in calculating eligible basis, if successful, will have a widespread and substantial impact throughout the low income housing industry.  It would, among other things: (1) impact how applications are made and how the eligible basis and corresponding tax credits are calculated, (2) impact how tax credit investors view past and future opportunities, (3) result in the filing of amended tax returns throughout the country if it is determined that reallocation or adjustment of the of tax credits is required and (4) discourage private investment in affordable housing as a whole.  In any event, as noted in *Grable,* the federal government clearly has a substantial interest in federal taxes:

> The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in … taxes …

---

[8] Judge Tostrud ultimately held that the issues raised in the *Martinson* Complaint were not substantial, because the federal government did not have a direct stake in the outcome and because the federal question raised would not be dispositive of the case.  *Id.* at 574-575.  The facts here are clearly distinguishable as the government certainly has an interest in the calculation of its own tax credits and, the federal issue raised (i.e. whether the eligible basis was properly calculated) is "dispositive of the case."  Again if Defendants' calculation of "eligible basis' complies with federal law, Plaintiffs have no case.

*Grable*, 545 U.S. at 315.  A substantial federal question exists which should be determined in the federal forum to ensure the uniformity and application of the federal tax code and the calculation of eligible basis in determining the receipt of federal tax credits.

Plaintiffs attempt to recast the substantial nature of the federal issues raised by their Complaint, seeking to instead characterize the calculation of eligible basis and the corresponding issuance of tax credits as "fact-bound and situation-specific."  *See* Dkt. 22 at 24. While seemingly convenient to make this assertion in their motion for remand, this obviously conflicts with the fact that the Plaintiffs have brought their action as a putative class action which would customarily mean the case *does not* present "fact-bound and situation-specific" matters.  But apart from that, Plaintiffs' characterization is superficial to say the least.  To argue the calculation of eligible basis and the corresponding issuance of tax credits are "fact-bound and situation-specific" misses (perhaps intentionally) the substantial and fundamentally disputed federal issues of (i) how the federal program requires eligible basis to be calculated and (ii) what relief or remedies, if any, are available under federal law in the event an excessive allocation of tax credits are issued under the federal program.

Even if Plaintiffs could establish that Defendants improperly calculated their eligible basis under 26 U.S.C. § 42 – *which Plaintiffs cannot establish* – Plaintiffs' Complaint necessarily raises substantial federal questions.  Even though Plaintiffs now apparently concede that 26 U.S.C. § 42 does not provide for a private cause of action, *see* Dkt. 22 at 10 – 11, Plaintiffs' Complaint still requires the Court to determine: (a) whether the Low Income Housing Tax Credit Program grants private residents the authority to

rectify any perceived misallocation of federal tax credits through state law causes of action, or (b) whether the regulatory and enforcement authority resides solely with the IRS and the Allocators, as Defendants contend.  *See* Dkt. 16 at 14, n. 5.  Clearly, the federal government has a substantial interest in the method of enforcement of its own laws.

### C.   Grable Factor 4: The Federal Issues Necessarily Raised in Plaintiffs' Complaint are Capable of Resolution Without Disrupting the State-Federal Balance Approved By Congress.

Under the fourth Grable requirement, the federal issue will "qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14.  The fourth factor "is concerned with the appropriate balance of federal and state judicial responsibilities."  *Gunn*, 568 U.S. at 264.  When analyzing the fourth requirement, the court should consider whether exercising jurisdiction over similar actions "would materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.  Indeed, would the exercise of federal jurisdiction over similar claims "herald a potentially enormous shift of traditionally state cases into federal courts"? *Id*.  If not, then "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law [] claim." *Id*.

Here, the federal issues necessarily raised in Plaintiffs' Complaint are capable of resolution without disrupting the state-federal balance approved by Congress.  Exercising jurisdiction over this case will not result in a shift of state law consumer protection and common law claims into federal court.  On the contrary, the allegations in Plaintiffs' Complaint are narrowly and exclusively focused on the proper interpretation and

application of federal law—and thus, fit squarely within this fourth *Grable* factor—because each and every one of Plaintiffs' claims is predicated upon the allegation that Defendants allegedly miscalculated the "eligible basis" as it pertains to the issuance of federal tax credits associated with the construction and rehabilitation of parking at their developments. *See e.g.*, Dkt. 1-1, Ex. A.  While Plaintiffs try to sidestep this inevitable fact by arguing that state housing agencies allocate the tax credits, they nonetheless recognize this is done in accordance with federal law.  *See generally id.*; *see also* 26 U.S.C. § 42.  And more to the point, these federal tax credits themselves are created by federal law for the purpose of promoting the federal policy of subsidizing affordable housing.  These federal tax credits are only available when Defendants prove they complied with that federal law.  These are the dispositive federal issues in this case.

Finally, Plaintiffs cite a series of cases to argue that "state courts routinely adjudicate cases *solely* premised on LIHTC issues," and therefore the exercise of jurisdiction of this case would somehow "*disturb*, not further, the congressionally approved balance of federal and state judicial responsibilities."  Dkt. 22 at 25.  However, the cases cited by Plaintiffs are inapposite because, while involving low income housing and tax credits, *most* of these cases did not involve claims where an underlying violation of federal law was a necessary element of Plaintiffs' claims, *none* address removal to/remand from state court, and *none* made any reference whatsoever to the *Grable* factors.  *See Homeowner's Rehab, Inc. v. Related Corporate V SLP, L.P.,* 99 N.E.3d 744 (Mass. 2018) (at issue was when a right of first refusal may be exercised under an agreement between partners in housing complex financed in part with low income housing complex); *see also*

*Columbus City Schs. Bd. Of Educ. v. Franklin Cnty. Bd. Of Revision*, 112 N.E.3d 864 (Ohio 2018) (at issue was the State of Ohio's consideration of government subsidies for the valuation of a low income housing property for state tax purposes); *Maryville Properties, L.P. v Nelson*, 83 S.W.3d 608 (Mo. Ct. App. 2002) (at issue was the State of Missouri's valuation of a low income housing property for state and local tax purposes); *Nordbye v. BRCP/GM Ellington*, 266 P. 3d 92 (Or. Ct. App. 2011) (at issue was whether a use restriction recorded a restrictive covenant in conjunction with the receipt of tax credits "ran with the land" and remained enforceable by tenant after tax credits were recaptured); *Nonprofit Hous.Corp. v. Tennessee Hous. Dev. Agency*, No. M2014-01588-COA-R3-CV, 2015 WL 5096181 (Tenn. Ct. App. Aug. 27, 2015) (at issue was the state allocator's denial of plaintiffs' application for tax credits and whether the lawsuit was moot because the tax credits had already been allocated to others); *In re Adoption of 2003 Low Income Hous. Tax Credit Qualified Allocation Plan*, 848 A. 2d 1 (N.J. Super. Ct. App. Div. 2004) (at issue was the state allocator's distribution of tax credits and whether the way they were distributed perpetuated racial discrimination); *In the Matter of New Jersey Hous. and Mortg. Fin. Agency 2009 Final Cycle of Low-Income Hous. Tax Credit Awards*, No. A-5049-09T2, 2013 WL 1759933 (N.J. Super. Ct. App. Div. Apr. 25, 2013) (at issue was whether the state agency allocating tax credits acted in an arbitrary and capricious manner).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand and exercise federal jurisdiction in this case.

Dated:  May 14, 2021                    WINTHROP & WEINSTINE, P.A.

                                        By:  *s/Matthew R. McBride*
                                            Thomas H. Boyd, #0200517
                                            Matthew R. McBride, #0261981
                                            Quin C. Seiler, #0396699
                                            Olivia M. Cooper, #0398322

                                        225 South Sixth Street
                                        Suite 3500
                                        Minneapolis, Minnesota 55402
                                        (612) 604-6400
                                        tboyd@winthrop.com
                                        mmcbride@winthrop.com
                                        qseiler@winthrop.com
                                        ocooper@winthrop.com

                                        ***Attorneys for Defendants***

21687883v6

21