UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SUSAN ILIFF, <u>et al.</u>, on behalf
of themselves and all others
similarly situated

        Plaintiffs,

v.                                 **MEMORANDUM OF LAW**
                                     Civil File No. 21-649 (MJD/TNL)

DOMINIUM MANAGEMENT
SERVICES, LLC, <u>et al.</u>,

        Defendants.

---

Craig S. Coleman, Michael F. Cockson, Evelyn Snyder, and Rachel L. Cardwell, Faegre Drinker Biddle & Reath LLP; and James W. Poradek and Margaret Kaplan, Housing Justice Center, Counsel for Plaintiffs.

Thomas H. Boyd, Matthew R. McBride, Quin C. Seiler, and Olivia M. Cooper, Winthrop & Weinstine, PA, Counsel for Defendants.

## I.    INTRODUCTION

On September 14, 2021, the Court entered an Order granting Plaintiffs' Motion to Remand to State Court and stating that a Memorandum of Law would follow. [Docket No. 31] Therefore, the Court issues the following Memorandum of Law.

1

## II.     BACKGROUND

### A.     Factual Background

#### 1.     Defendants

According to the Complaint, Defendants are a series of housing and management companies with their principal place of business in Plymouth, Minnesota, associated with properties throughout Minnesota.  ([Docket No. 1-1] Compl. ¶¶ 9, 23-81.)  All named properties are managed by Defendant Dominium Management Services, LLC.  (Id. ¶ 81.)  Plaintiffs allege that all the named Defendants operate as a common enterprise under the Dominium banner and are parts of the larger entity that is "Dominium."  (Id. ¶¶ 20-22.)

Dominium is one of the largest developers and providers of low-income housing in the country, and many of its properties cater to senior citizens. (Compl. ¶ 2.)  Many of these properties promote the promise of heated, underground parking that is especially desirable in Minnesota winters.  (Id.)

In addition to providing housing management, Dominium maintains multiple arms of business that focus on areas such as construction and architectural services.  (Compl. ¶¶ 106-08.)  Dominium has historically obtained financing for its low-income housing developments through a variety of sources such as loans and grants awarded through government programs, Low Income

Housing Tax Credits ("LIHTC"), HOME financing, tax exempt bonds, and tax increment financing. (Id. ¶ 102.) Dominium's business model depends on public funding through receiving LIHTC to help finance the development or acquisition of low-income housing and through charging its low-income residents rent based on their income and receiving additional rent based on federal and/or state subsidies. (Id. ¶ 3.)

### 2. LIHTC Program

The LIHTC program was established by the federal Tax Reform Act of 1986 to encourage private investment in affordable rental housing. (Compl. ¶ 86.) The program provides developers and investors with tax credit for the cost of developing affordable housing, LIHTC, that can be used to offset tax liabilities over a ten-year credit period, often on a dollar-for-dollar basis. (Id. ¶¶ 86-87, 99.)

The LIHTC program is jointly administered by the IRS and "Allocators," typically state or local housing agencies, such as the Minnesota Housing Finance Agency. (Compl. ¶ 89.) Allocators are charged with LIHTC allocation and much of the program oversight that is necessary to ensure the program functions correctly. (Id.) While each state receives a certain allocation of LIHTC from the federal government based on state population, the Allocators set further

guidelines for distributing and issuing credits. (Id. ¶ 90.) Allocators receive and evaluate the applications for credits from housing developers. (Id. ¶¶ 91-92.) These applications must accurately report the costs of construction or rehabilitation so that the Allocators can ensure that LIHTC are distributed properly. (Id. ¶ 93.) Allocation decisions are made in large part based on a project's "eligible basis" which is the depreciable project costs for the portion of the housing to be dedicated to affordable housing. (Id. ¶ 93.)

LIHTC applicants must decide whether they will include or exclude the cost of parking construction from their eligible basis in their application. Under federal law, an applicant's eligible basis can include areas that are used in common by the tenants of a building or are provided as comparable amenities to all residents. Therefore, for a parking garage to be included in an applicant's eligible basis, it would have to be an amenity comparable to a common area, available to all without an additional charge or fee. (Compl. ¶ 115 (citing 26 U.S.C. § 42(d)(4)(B).) The Minnesota Housing Finance Agency, the agency responsible for allocating housing tax credits in Minnesota, has explicitly stated that tenant facilities such as parking and garages may only be included in an applicant's eligible basis if tenants are not charged an additional fee for their use

4

and they are available to all tenants in the project.  (Minnesota Housing 2021 Housing Tax Credit Program Procedural Manual at 23, available at https://www.mnhousing.gov/sites/multifamily/taxcredits (last visited Sept. 14, 2021).)  Thus, a developer can either exclude all parking development costs from its eligible basis and charge tenants for parking rent or include all parking development costs in its eligible basis, in which case the developer can obtain LIHTC for construction costs but cannot charge tenants for parking.  (Compl. ¶¶ 115-16.)

### 3. Plaintiffs and the Alleged Misrepresentations

Plaintiffs are eight tenants of Dominium's Minnesota properties and one non-profit tenant advocacy organization, HOME Line, headquartered in Bloomington, Minnesota.  (Compl. ¶¶ 11-19.)  Each tenant Plaintiff has paid a monthly fee for parking while living at Dominium's properties.  (Id. ¶¶ 11-18.)

In its leases, Dominium promises that it operates is premises in accordance with Section 42 of the Internal Review Code of 1986.  This includes compliance with the LIHTC program.  (Compl. ¶ 3.)  Under the LIHTC program, Defendants could only charge for parking if their costs of parking construction were not included in their eligible basis.  (Id. ¶ 6.)  Plaintiffs allege that Dominium

5

engaged in fraudulent misrepresentation of its construction costs to finance the construction of its parking garages with LIHTC and then charge its tenants for parking. (Id. ¶¶ 8-9.) Plaintiffs allege that Dominium shifted the cost of parking construction to other aspects of construction on its application. (Id.) Thus, Dominium intentionally underreported the costs of parking construction, shifted those costs to other portions of the project, took LIHTC for those shifted costs, excluded the underreported cost of parking construction, and then charged its tenants parking rent. It did so for all properties at issue in this lawsuit. (Id. ¶¶ 9, 123-24.) Plaintiffs allege that Defendants have harmed their tenants by making them pay for a service (parking) they are entitled to receive for free. (Id. ¶ 126.)

### B. Procedural History

Plaintiffs initiated this action in Hennepin County District Court by serving a summons and complaint upon the Defendants on February 4, 2021. ([Docket No. 1] Notice of Removal ¶ 1; Notice of Removal, Ex. A.) The class action Complaint asserts: Count 1: Minnesota Prevention of Consumer Fraud Act; Count 2: Minnesota Deceptive Trade Practices Act: Deceptive Lease Agreements; and Count 3: Unjust Enrichment. All three counts are based on the allegation that Defendants fraudulently charged tenants parking rent which they could not lawfully charge because Defendants had received LIHTC based on an

6

eligible basis that included the cost of constructing the parking.  (See, e.g., Compl. ¶¶ 164, 176, 181.)  Plaintiffs seek to certify a class of all Dominium tenants in Minnesota who have paid parking rent.  (Id. ¶ 151.)

Defendants removed this case to this Court on March 5, 2021, based on federal question jurisdiction.  Defendants filed a Motion to Dismiss on April 12, 2021.  [Docket No. 13]  On April 23, 2021, Plaintiffs filed a Motion to Remand this case to state court on the grounds that this Court lacks jurisdiction.  [Docket No. 19]  The parties agreed that the Court should decide the motion to remand before briefing on the motion to dismiss [Docket No. 24], and the Court ordered the motion to dismiss briefing stayed pending a decision on the motion for remand [Docket No. 26]

### III.  DISCUSSION

#### A.  Legal Standard for Remand

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide."  Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).  "Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion."  Id.

"[T]he party seeking removal has the burden to establish federal subject matter jurisdiction," and "all doubts about federal jurisdiction must be resolved in favor of remand." Cent. Iowa Power Cooperative v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (citations omitted).

"Defendants may remove civil actions to federal court only if the claims could have been originally filed in federal court." Id. (citations omitted). Here, Defendants removed the case to this Court based on federal question jurisdiction.

> Removal based on federal-question jurisdiction is governed by the well-pleaded-complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

Id. (citation omitted). Federal question jurisdiction can be established in two manners: 1) if the plaintiffs plead a cause of action created by federal law; or 2) if plaintiffs' "state-law claims [] implicate significant federal issues" because the "claims recognized under state law [] nonetheless turn on substantial questions of federal law." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005). Under the second test, known as the Grable doctrine,

federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable, 545 U.S. at 314). All four requirements must be met for federal question jurisdiction to apply. Id.

### B.   Cause of Action under Federal Law

As both Plaintiffs and Defendants agree, Plaintiffs' Complaint pleads no causes of action created by federal law.

### C.   Grable Doctrine

The Court holds that none of the four Grable factors apply; therefore, Grable jurisdiction does not attach.

#### 1.   Whether Plaintiffs' Claims Necessarily Raise a Federal Issue

Plaintiffs' claims do not necessarily raise a federal issue. The parties agree on the relevant interpretation of the LIHTC statute. They disagree on the facts of whether Defendants misrepresented their parking construction costs to the Minnesota Housing Finance Agency and whether Plaintiffs state a claim under Minnesota law given the governing written lease agreements and the lack of a private cause of action under the LIHTC statute.

Plaintiffs are not seeking to redress overpayment of LIHTC or the precise amount of LIHTC that Defendants should have received.  Plaintiffs are not the IRS or any other entity seeking to recover ill-gotten tax credits.  Rather, they are Minnesota residents seeking to recover monthly parking rent that they allege Defendants had no right to collect from them.  This is a question that can be answered without reference to a disputed question of federal law.

### 2. Whether the Case Presents an Actually Disputed Federal Issue

There is no actually disputed federal issue because the parties agree on the relevant interpretation of the LIHTC statute.  They disagree on the facts and on the interpretation of Minnesota law, but not federal law.  Dominium understood that the law required it to either receive LIHTC for parking-development costs or charge its tenants for parking, but not both.  This case is not like <u>Riseboro Community Partnership Inc. v. SunAmerica Housing Fund No. 682</u>, in which the court held that <u>Grable</u> jurisdiction applied because deciding the plaintiff's breach of contract claim regarding whether development nonprofit had a right of first refusal ("ROFR") to purchase low-incoming housing project required the court to "make binding legal determinations of rights and liabilities under [federal law]," because the plaintiff's "claims will require the Court to resolve the parties'

10

dispute over (1) whether 26 U.S.C. § 42 contemplates any restrictions on an ROFR holder's ability to exercise it, and (2) whether 26 U.S.C. § 42(i)(7) envisions an ROFR that differs from a common law ROFR." 401 F. Supp. 3d 367, 372–73 (E.D.N.Y. 2019) (citation omitted).

### 3. Whether the Case Raises a Substantial Federal Issue

This case does not raise a substantial federal issue. "The substantiality inquiry under Grable looks [] to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. A federal question qualifies as "substantial" when "its resolution was both dispositive of the case and would be controlling in numerous other cases," and the case presents "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [] cases." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006) (citation omitted). In contrast, it is less likely to be substantial when the case "is fact-bound and situation-specific" and the issue is not likely to arise frequently. Id. at 701.

Here, unlike in Grable, no action by a federal agency is involved. And the parties do not disagree on the relevant interpretation of the LIHTC law. Their disagreement is primarily factual – did Defendants misrepresent the costs of

11

parking construction – and, secondarily, legal to the extent that they disagree regarding whether Plaintiffs can state a claim for relief under Minnesota statutory and common law when there is no private cause of action under the LIHTC statute and a written contract governs the parties' relationship.  Neither of these issues is important to the federal system as a whole.  The primary legal issue is one of Minnesota law, not federal law.

Although the federal LIHTC law "provides the backdrop for [plaintiffs'] claim[s], and its interpretation may be significant to the parties, there is no indication that this regulation or any issues related to the regulation are important to the federal system as a whole.  No doubt regulatory compliance is a federal interest in the abstract, but that alone cannot be enough to classify a federal issue as substantial."  Martinson v. Mahube-Otwa Cmty. Action P'ship, Inc., 371 F. Supp. 3d 568, 574 (D. Minn. 2019).  See also, e.g., Marshall v. Conway Reg'l Med. Ctr., No. 4:20-CV-00933 JM, 2020 WL 5746839, at *2 (E.D. Ark. Sept. 25, 2020) (holding that a plaintiff's use of federal law to "establish the evidence of the standards of care required by Defendant" under state law claims did not establish third Grable factor and noting that a "congressional determination that there should be no federal remedy for the violation of [a] federal statute is

tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction") (quoting Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 814 (1986)).

### 4. Whether Litigation in State Court Presents a Risk of Disruption of the Federal-State Balance Approved by Congress

Litigation in state court does not present a risk to the federal-state balance approved by Congress. The fourth Grable factor ensures that "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." Grable, 545 U.S. at 313-14. The "requirement is concerned with the appropriate balance of federal and state judicial responsibilities." Gunn, 568 U.S. at 264 (citation omitted).

In this case, the state court will not be resolving a dispute on the interpretation of federal law or making a decision that will impact how a federal entity acts. Rather, the focus will likely be on the fact-intensive question of whether these interconnected Defendants had a practice of misrepresenting their

parking construction costs. It is true that a decision regarding whether Minnesota consumer protection statutes or equitable law permits tenants to sue to recover rents paid based on a developer's violation of federal affordable housing law could lead to an increase in tenant lawsuits in Minnesota. However, these lawsuits would be based on state, not federal law, and would not change how the federal government or the state Allocators interpret the requirements of the LIHTC Program. Nor would the lawsuits curtail federal or state governments' ability to bring their own enforcement actions.

Because no federal question jurisdiction exists, this Court lacks jurisdiction over the matter and the case is remanded to state court.


Dated:  September 15, 2021        s/Michael J. Davis
                                  Michael J. Davis
                                  United States District Court